MEGINNITY v. PIKE.

1. BROKERS—COMMISSIONS—WHEN COMMISSION EARNED.

When offer to purchase property was accepted by owners' agent, as he was authorized in writing to do, the commission which owners had agreed to pay to person securing purchaser was earned.

2. SAME—PRIVITY OF CONTRACT.

Where acknowledgment was made in writing by owners' agent that plaintiffs had taken advantage of the offer made by owners to pay a commission to the person securing a purchaser for their property, and that plaintiffs were entitled to such commission, a privity of contract was created between plaintiffs and owners enforceable in action at law.

3. SAME.

Where three owners agreed in writing to pay commission to person procuring purchaser for their property, each agreeing to pay one-third thereof, plaintiffs securing purchaser, who were paid two-thirds of said commission by two owners, were entitled to recover the other one-third from other owner.

Error to Wayne; Moll (Lester S.), J. Submitted January 6, 1931. (Docket No. 9, Calendar No. 35,283.) Decided June 1, 1931.

Assumpsit by Norman Meginnity and another against Clara L. Henderson Pike for commission for the sale of real estate. Judgment for plaintiffs. Defendant brings error. Affirmed.

*John E. Martz,* for plaintiffs.

*Rowland M. Connor,* for defendant.

SHARPE, J. The defendant and her brother and sister, as heirs of their mother, were the owners of certain property in Detroit which they desired to dispose of. The brother was trying to find a buyer, as was also the defendant and her attorney, Charles F. Delbridge. The price was agreed upon. In order to stimulate activity in procuring a purchaser, and to avoid dispute as to the person who should do so, a written agreement was entered into between them. It provided that upon the deposit with Mr. Delbridge of an offer in writing from a responsible party to purchase the property at the price agreed upon, accompanied by a certified check for $3,000, payable to the order of the defendant as executrix, the parties would enter into a written contract to sell the same on the terms therein stated.

It was further provided that on receipt of the first offer made, accompanied by such deposit, Mr. Delbridge should acknowledge its receipt and enter into an agreement on behalf of the parties for the execution of such contract by them and notify each of the parties thereto of such action. The paragraph following then appears therein:

"That the usual real estate commission of 5 per cent. of the sale price of said property shall be paid by the parties hereto, each a one-third part thereof, to such person or persons as shall procure such purchaser, whether such person or persons procuring such purchaser shall be one of the parties, to be paid out of the first $50,000 paid on said contract."

It became known to many real estate salesmen that the property was for sale. Mr. Delbridge testified:

"Personally, if I could have found a buyer I would have been tickled to death to get the commission myself, and my recollection is not clear whether it was Mr. Meginnity or Mr. Helbig, or both of them, one of them came and said they had this man, Ben Jacobs, that would buy this property.

"*Q.* So then they were the first to produce Mr. Jacobs?

"*A.* There is no question about that."

Mr. Jacobs' offer was made in writing on June 16, 1922. It was brought to Mr. Delbridge by the plaintiffs. It fully complied with the requirements of the agreement, and was accompanied by a certified check for $3,000, payable to the defendant as executrix. Mr. Delbridge acknowledged its receipt in writing. He stated therein that it was the first offer made and that it constituted an agreement on the part of the defendant and her brother and sister to enter into a contract for the sale and purchase of the property.

He at once by letter informed the parties to the agreement of the receipt of the offer, and stated that he understood that Mr. Jacobs was financially responsible. In these letters he stated:

"I have explained to Norman Meginnity and August Helbig, the real estate men, who brought in this offer that the transaction carries the usual real estate commission of 5 per cent. on the purchase price thereof which, according to the terms of the agreement, is to be deducted out of the first $50,000 paid."

At the same time he wrote the plaintiffs, informing them of the agreement among the heirs relative to the commission (quoting the paragraph), and stating as his understanding that they were entitled to it.

When the Jacobs offer was accepted by Delbridge, the plaintiffs had earned the commission which the heirs had promised to pay to any person who should produce a purchaser who complied with the requirements of their offer. It appears that, by mutual consent of the heirs, Jacobs' offer and its acceptance were canceled and a similar offer from Howard Coffin was accepted and the sale to him thereafter consummated. The plaintiffs were instrumental in securing Mr. Coffin as a purchaser. Mr. Delbridge testified that he did not consider that they waived their right to a commission on the sale to Jacobs by doing so.

Under the terms of the agreement among the heirs, they constituted Mr. Delbridge as their agent to bind them by a preliminary agreement for the sale of their property. As such agent he acknowledged in writing that the plaintiffs had taken advantage of the offer made by them to pay a commission to the person securing a purchaser of the property and were entitled to such commission. A privity of contract was thereby created between the plaintiffs and the heirs, enforceable by the plaintiffs

in this action. Two-thirds of the commission have been paid by the other heirs, and the plaintiffs were entitled to a judgment against the defendant for her one-third thereof.

The judgment is affirmed.

BUTZEL, C. J., and WIEST, CLARK, McDONALD, POTTER, NORTH, and FEAD, JJ., concurred.